**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

SOUTHWESTERN BELL TELEPHONE
COMPANY,
            Plaintiff,
  vs.                                   **Case No. 01-4158-RDR**

STATE CORPORATION COMMISSION
OF THE STATE OF KANSAS, et al.,

            Defendants.

**MEMORANDUM AND ORDER**

This is an action to review a series of Kansas Corporation Commission (KCC) orders which concern the question of compensation due from plaintiff, an incumbent local exchange carrier (ILEC), to competitive local exchange carriers (CLECs), or vice versa, for calls placed to internet service providers (ISPs). Contracts, called interconnection agreements, between these carriers generally provide for reciprocal compensation for calls initiated by the customer of one carrier and terminated on the other carrier's facilities. However, calls to ISPs are generally one-way traffic because the ISPs seldom call the internet user. There is little compensation due for calls going the other way. Various orders in different forums have been issued to address this situation.

The FCC in a ruling filed February 26, 1999 left the issue of reciprocal compensation for ISP-bound traffic for state

regulatory commissions to decide. This was an issue in an arbitration dispute presented in a petition filed with the KCC in December 1999 by a company named TCG Kansas City, Inc. The arbitration involved TCG and plaintiff. While that arbitration was pending, the D.C. Circuit Court reversed the FCC ruling and remanded it for further consideration. In May 2000, at the suggestion of the arbitrator and with the support of plaintiff, the KCC opened a generic proceeding to determine whether reciprocal compensation should be paid for calls to an ISP. A representative of plaintiff stated in support of a generic proceeding: "Any decision on the treatment of ISP-bound traffic should be applied uniformly to all carriers and therefore should be addressed in a generic docket that will allow all affected parties to be heard." Rebuttal testimony of Curtis L. Hopfinger, Docket No. 00-TCGT-571-ARB, March 29, 2000 at p. 14. Plaintiff's representative also stated during the generic proceeding that: "in this proceeding, the [KCC] is not interpreting the language contained in interconnection agreements." Direct testimony of Curtis L. Hopfinger, Docket No. 00-GIMT-1054-GIT, June 12, 2000 at p. 4.

On December 18, 2000 the KCC issued an order in the generic proceeding finding that "calls terminating at an ISP modem that is within the same calling area as the originating end user are

local calls and entitled to reciprocal compensation." KCC Order, Docket No. 00-GIMT-1054-GIT, December 18, 2000 at p. 17. Plaintiff petitioned for reconsideration and on February 5, 2001, the KCC issued an order clarifying the December 18, 2000 order. One of plaintiff's objections to the December 18, 2000 order was that the KCC did not inform plaintiff that the policy of reciprocal compensation for ISP-bound traffic would be applied retroactively without allowing plaintiff to challenge individual contractual issues. KCC order, Docket No. 00-GIMT-1054-GIT, February 5, 2001 at pp. 3 & 6. The KCC clarified the order to state that it was not limiting plaintiff's right to arbitrate legitimate individual contractual issues or to present legitimate challenges to the interpretation of interconnection agreements. Id. at p. 3. More specifically, the KCC stated:

> Although this generic proceeding did not interpret terms of a specific interconnection agreement, SWBT [plaintiff] knew the question for the Commission [KCC] was whether SWBT must stop unilaterally withholding payment of reciprocal compensation for ISP-bound traffic in Kansas. This case arose because SWBT made a unilateral decision not to pay inter-carrier compensation to any competitive LEC in Kansas for traffic destined to an ISP modem. . . . SWBT used its interpretation of FCC rulings to justify its failure to pay millions of dollars in reciprocal compensation for ISP-bound traffic. . . . SWBT sought no guidance from this Commission about the appropriateness of it withholding payment. The Commission denies SWBT's request for reconsideration because SWBT did not have notice that the decision made in this generic proceeding would apply when interpreting existing interconnection agreements. The Commission concludes

>SWBT not only was aware of the scope of the decision to be made in this generic docket, but also encouraged the Commission and competitive LECs to maintain the status quo (i.e. SWBT withholding payment for ISP traffic) until a final decision was reached in this docket.

Id. at pp. 7-8 (citations omitted).  The clarifying order stated that the KCC was not precluding a party from seeking interpretation of disputes regarding interconnection agreements and did not supersede any interconnection agreement that used a different compensation system for ISP-bound calls.  Id. at pp. 8-9.  Nevertheless, the KCC stated:

>Even though the Commission has not interpreted specific terms of an interconnection agreement, the finding that traffic to an ISP is local and subject to reciprocal compensation will be employed when interpreting existing interconnection agreements in Kansas.  This is not retroactive rate making.  Instead this finding fulfills the purpose of the generic docket to define for all LECs how ISP-bound traffic should be treated in Kansas. . . . The Order provides guidance to LECs concerning what is considered local traffic for reciprocal compensation purposes.  However, the Order does not preclude consideration of legitimate issues concerning interpretation of interconnection agreements.
>. . . .
>When interpreting interconnection agreements, the Commission will apply basic rules for construction of contracts.  SWBT will need to consider those rules to determine whether it has the burden to come forward or the burden of proof if it challenges an interconnection agreement.  The cardinal rule of contract construction requires the parties' intent to be determined from the four corners of the instrument by construing all the provisions together and in harmony with each other, rather than by critical analysis of a single or isolated provision.

4

Id. at pp. 9 & 11.

On April 27, 2001 the FCC issued its order on remand from the D.C. Circuit.  The FCC concluded in this order that calls to an ISP between and ILEC and a CLEC should not be governed by the statutory requirements for reciprocal compensation.  It further established an interim cost recovery mechanism for ISP-bound traffic.[1]

On May 11, 2001 the KCC denied plaintiff's petition for reconsideration of the February 5, 2001 clarifying order and asked the parties for briefs regarding the impact of the FCC's order on remand.  On August 16, 2001 the KCC issued an order stating that, among other holdings, the KCC would continue to have authority to enforce terms of existing interconnection agreements relating to reciprocal compensation of ISP-bound traffic in Kansas prior to the effective date of the FCC's Order on Remand, June 14, 2001.  KCC Order, Docket No. 00-GIMT-1054-GIT, August 16, 2001, at pp. 10-12.  On October 4, 2001 the KCC denied another petition for reconsideration filed by plaintiff.

### Arguments of the parties

Plaintiff contends that the KCC's orders violate federal law

---

[1] This order on remand was reviewed by the D.C. Circuit which did not vacate the order, but remanded it again for further proceedings in 2002. Worldcom, Inc. v. F.C.C., 288 F.3d 429 (D.C.Cir. 2002).

5

because they impose an obligation upon plaintiff on the basis of plaintiff's interconnection agreements with CLECs in a generic proceeding without actually interpreting the terms of the specific interconnection agreements.  Similarly, plaintiff contends that the KCC has acted arbitrarily and capriciously in violation of state law by reaching a conclusion regarding the meaning of terms in the interconnection agreements without actually considering the contractual language.  Finally, plaintiff asserts that the KCC orders violate state law as to the burden of proof in breach of contract cases by requiring plaintiff to show that it did not breach an interconnection agreement in any action brought by a CLEC alleging that there is money owed for ISP-bound calls.

 The KCC argues that plaintiff asked the KCC to address the question of compensation for ISP traffic in a generic proceeding and should not now complain that the procedure was in error.  The KCC further argues that it did not violate state law in construing interconnection agreements because it never reached the point of construing a specific interconnection agreement.  Finally, the KCC denies that it shifted the burden of proof in any future breach of contract claim which asserts that plaintiff is withholding compensation due for ISP traffic.

 Some CLECs are also defendants in this case.  They have

filed a brief which makes the following arguments against plaintiff's position. First, they contend that the KCC's orders do not attempt to interpret existing interconnection agreements. Second, they assert that plaintiff invited the use of a generic proceeding and cannot now claim error because it was a generic proceeding. Third, they contend that this court does not have jurisdiction to review whether KCC's orders violate state law because of the Eleventh Amendment. Finally, they argue that the KCC's orders do not violate state law because they do not purport to interpret existing interconnection agreements or shift the burden of proof by creating a presumption of reciprocal compensation for ISP calls.

The Citizens' Utility Ratepayers Board has also filed a brief in this matter. Its position is substantially the same as that of the KCC.

In reply, plaintiff contends that it favored a generic proceeding for the purposes of determining the compensation requirements when arbitrating new interconnection agreements. Plaintiff contends that it did not agree, however, to a generic proceeding which would decide how ISP calls would be compensated under <u>existing</u> interconnection agreements. Even in the event that plaintiff was held to have "invited" the alleged error of a generic proceeding, plaintiff asserts that the court must

vacate the KCC's orders because the KCC lacked the statutory authority to issue a generic order that interprets existing interconnection agreements without considering the specific language of the agreements.  Finally, plaintiff asserts that this court has jurisdiction to consider whether the KCC's interpretation of an interconnection agreement complies with state law because of its impact upon the operation of the Telecommunications Act of 1996.

Finally, there is an undercurrent of an argument as to whether the KCC's orders are contrary to the FCC's position regarding the treatment of or compensation for calls made to ISP modems.  Plaintiff contends in its statement of facts that "the FCC does not require reciprocal compensation for ISP-bound traffic."  Opening brief, p. 6.  However, this claim is not listed by plaintiff as an argument for reversing or vacating the KCC's orders.  As the opposing parties note in their briefs, several courts have held that state commissions do not violate federal law by requiring reciprocal compensation for calls to ISPs.  See, e.g., <u>Michigan Bell Telephone Co. v. MFS Intelenet of Michigan, Inc.</u>, 339 F.3d 428, 436 (6th Cir. 2003); <u>Southwestern Bell Tel. Co. v. Brooks Fiber Communications</u>, 235 F.3d 493, 499-501 (10th Cir. 2000).  It appears to the court that plaintiff is making a procedural challenge to the KCC orders in

8

the arguments listed in its brief. The court shall focus on those arguments.

### Standard of review

The parties appear to agree that a <u>de novo</u> standard applies to this court's review of plaintiff's federal law claim and that an arbitrary and capricious standard applies to this court's review of plaintiff's state law claims. See <u>Brooks Fiber Communications</u>, 235 F.3d at 498.

### Federal law

Plaintiff supports its federal law argument with the case of <u>Pacific Bell v. Pac-West Telecomm, Inc.</u>, 325 F.3d 1114 (9th Cir. 2003). In <u>Pacific Bell</u>, the court considered three consolidated appeals of orders made by the California Public Utilities Commission (CPUC). In two of the appeals, Pacific Bell, which is an incumbent local exchange carrier like plaintiff in the case at bar, challenged two generic rulemaking orders by CPUC which required that reciprocal compensation provisions in interconnection agreements apply to ISP-bound traffic. In the other appeal, Pacific Bell challenged the result of an arbitration proceeding before the CPUC which approved an arbitrated interconnection agreement that required reciprocal compensation for calls to ISPs. According to the Ninth Circuit opinion, the CPUC:

> "emphasized that its generic orders were the

> product of 'a rulemaking proceeding,' pursuant to the CPUC's 'legislative authority.' 'In such instances,' it held, 'the requirements are purely statutory and the agency is not circumscribed by the concept of due process or other restrictions applicable to judicial or quasi-judicial proceedings.'"

325 F.3d at 1121. The Ninth Circuit held that this exceeded the statutory authority over interconnection agreements granted by the Telecommunications Act to state commissions. The court explained that state commissions only have the authority under 47 U.S.C. § 252 to approve new arbitrated interconnection agreements and to interpret existing ones according to their terms. 325 F.3d at 1125. The FCC has held that ISP traffic is "interstate" for jurisdictional purposes and therefore the FCC, not state commissions, has the authority to promulgate "generic" regulations over ISP traffic. Id. The court concluded:

> By promulgating a generic order binding on existing interconnection agreements without reference to a specific agreement or agreements, the CPUC acted contrary to the [Telecommunication] Act's requirement that interconnection agreements are binding on the parties, or, at the very least, it acted arbitrarily and capriciously in purporting to interpret "standard" interconnection agreements.

325 F.3d at 1125-26. The court buttressed this holding with the finding that the generic orders were inconsistent with the Telecommunications Act's mandate that interconnection agreements have binding force. 325 F.3d at 1127. It further rejected the

contention that the CPUC was interpreting "standard" interconnection agreements, since the CPUC explicitly stated that it was making a general binding rule and because no interconnection agreements were made part of the administrative record.  325 F.3d at 1128.

In the third of the three consolidated appeals, however, the Ninth Circuit affirmed the CPUC holding in an arbitration of an interconnection agreement which reached the same result as the generic orders overturned by the Ninth Circuit.  The Ninth Circuit held that it was not arbitrary and capricious or inconsistent with the Telecommunications Act for the CPUC to hold that ISP traffic was subject to reciprocal compensation payments in the context of a specific interconnection agreement being negotiated between an ILEC (Pacific Bell) and a CLEC (Pac-West Telecomm, Inc.).

The court finds that the orders of the KCC challenged in this case are distinguishable from the generic orders vacated by the Ninth Circuit in Pacific Bell.  The KCC has stated that it was not superseding any existing interconnection agreement or precluding a party from seeking an interpretation of an existing interconnection agreement according to the basic rules for the construction of contracts, rather it was issuing an order that would be "employed when interpreting existing interconnection

11

agreements in Kansas." This is significantly different from the CPUC explicitly legislating a rule which would bind the parties to an interconnection agreement without examining the language of the interconnection agreement. In our opinion, the general rule which gives deference to an agency's interpretation of its own regulation is applicable here to the KCC's interpretation of its own order. See, e.g., Belco Petroleum v. Federal Energy Regulatory Commission, 589 F.2d 680, 685-86 (D.C.Cir. 1978); Chesapeake & Ohio Railway Co. v. United States, 571 F.2d 1190, 1194 (D.C.Cir. 1977). According to the KCC, it has stopped short of interpreting existing interconnection agreements without considering their terms. We give deference to this construction of the KCC orders and we find that the orders do not legislate in a manner outside the jurisdiction of state commissions under the Telecommunications Act, as in the Pacific Bell case. We further find that the KCC did not interpret or modify the language of existing interconnection agreements. Therefore, we reject plaintiff's contention that the KCC violated federal law and do not reach the contention that plaintiff invited the error upon which plaintiff has based its claim for review.

### State law

We reject the Eleventh Amendment challenge to our

consideration of the state law arguments.  See Michigan Bell Telephone Co., 339 F.3d at 432-22; Verizon Delaware, Inc. v. A.T.&T. Communications, 326 F.Supp.2d 574, 578-80 (D.Del. 2004).

Plaintiff's first argument is that the KCC has violated the principles of Kansas contract law by interpreting interconnection agreements without considering the specific terms of the agreements.  Plaintiff's second argument is that the KCC has violated the principles of Kansas contract law by establishing a presumption that plaintiff has violated the terms of the interconnection agreements, rather than requiring a party claiming that plaintiff has breached the agreement to bear the burden of proof.  Plaintiff's arguments do not persuade us that the KCC has acted in an arbitrary or capricious manner.

Ultimately, plaintiff is seeking "a ruling that the [KCC] must interpret and bind the parties to the terms of each particular [interconnection] agreement without prejudging issues in a proceeding in which the language of particular agreements is not even before the KCC."  Plaintiff's reply brief at p. 9.  Such a ruling, however, does not appear to be in contradiction with the KCC orders at issue.  Plaintiff asserts that the contradiction is exposed in the KCC's statement that the "finding that traffic to an ISP is local and subject to reciprocal compensation will be employed when interpreting

13

existing interconnection agreements in Kansas." Feb. 9, 2001 Order at p. 9. To "employ" a finding is not necessarily the same as prejudging the meaning of the language of a contract without considering the specific language and the intent of the parties. The finding may be "employed" in an informative manner without being binding or dispositive. Therefore, we find that the KCC was not arbitrary or capricious as claimed by plaintiff. The KCC did not rule that it would interpret the language of specific interconnection agreements without considering the actual language of the agreements and the intent of the parties. Indeed, it said the opposite. The KCC also stated, contrary to plaintiff's claim, that it was not creating a presumption or altering the rules which govern the bringing of contractual claims in Kansas. The KCC only stated that it would employ a generic determination when it interpreted an interconnection agreement. On the record before the court, this does not appear to be arbitrary or capricious.

This is especially so in the context of an interconnection agreement. The Tenth Circuit has recently discussed how interconnection agreements arise as "'one step in a complex and ongoing regulatory process.'" E.spire Communications, Inc. v. New Mexico Public Regulation Commission, 392 F.3d 1204, 1207 (10th Cir. 2004)(quoting, E.Spire v. Baca, 269 F.Supp.2d 1310,

14

1329 (D.N.M.2003)).

>An interconnection agreement is not an ordinary private contract. It is a document resulting from arbitration authorized and required by federal law which cannot be viewed in isolation. An interconnection agreement is not to be construed as a traditional contract but as an instrument arising within the context of ongoing federal and state regulation.

<u>Id</u>.

<u>Conclusion</u>

For the above-stated reasons, we conclude that plaintiff has not demonstrated a violation of federal or state law. Therefore, the court shall deny relief to plaintiff and direct that judgment be entered in favor of defendants.

**IT IS SO ORDERED.**

Dated this 26th day of January, 2005 at Topeka, Kansas.


                                    s/Richard D. Rogers
                                    United States District Judge

15